# UNITED STATES BANKRUPTCY COURT FOR THE
# NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | **Chapter 7** |
| AGRIPROCESSORS, INC., ) | |
| ) | **Bankruptcy No. 08-2751** |
| DEBTOR. ) | |
| ) | |
| JOSEPH E. SARACHEK, in his capacity ) | |
| as CHAPTER 7 TRUSTEE, ) | |
| ) | |
| PLAINTIFF, ) | Adversary No. 10-09196 |
| ) | |
| v. ) | |
| ) | |
| RON WAHLS; GARNAVILLO ) | |
| GOSPEL HALL ASSOCIATION, ) | |
| ) | |
| DEFENDANTS. ) | |

### RULING ON DEFENDANT GARNAVILLO GOSPEL HALL ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT AND RENEWED MOTION FOR SUMMARY JUDGMENT

This matter came before the Court at telephonic hearing on Defendant Garnavillo Gospel Hall Association's Motion for Summary Judgment and Renewed Motion for Summary Judgment. Desiree Kilburg appeared on behalf of Plaintiff, Joseph Sarachek in his capacity as Chapter 7 Trustee. Laura Seaton and Lynn Hartman appeared on behalf of Garnavillo Gospel Hall Association. The Court took the matters under advisement.

## STATEMENT OF THE CASE

Plaintiff's complaint seeks to recover fraudulent conveyances and/or preferential transfers made by Debtor to Defendants in the amount of $164,375.22. Garnavillo Gospel Hall Association ("Garnavillo") has moved for summary judgment arguing that Ron Wahls—the co-defendant—cashed the checks, diverted the money to other purposes, and Garnavillo received no benefit from the transfers. Plaintiff argues Wahls acted as Garnavillo's agent and thus both Defendants are liable. The Court finds that Plaintiff has presented sufficient facts to raise an issue for trial on the agency relationship. The Court will deny the Motion for Summary Judgment and Renewed Motion for Summary Judgment.

## BACKGROUND

Plaintiff filed this adversary on November 2, 2010, alleging Debtor, Agriprocessors, Inc., had fraudulently conveyed seventy-seven (77) checks totaling $164,375.22 to Defendants Ron Wahls and Garnavillo. In the alternative, Plaintiff argues these transfers qualify as preferential transfers from Debtor to Defendants under 11 U.S.C. § 547(b). Garnavillo filed its answer and affirmative defenses on February 8, 2011. Wahls has not filed an answer nor entered an appearance in the adversary.

On December 12, 2011, Garnavillo filed a Motion for Summary Judgment. The Court held a hearing on the Motion on January 20, 2012. In response to the

Motion, Plaintiff argued the Court should defer ruling until Plaintiff took the deposition of Ron Wahls and/or finished other discovery. The Court granted Plaintiff's request and gave Plaintiff until February 3, 2012, to complete discovery and until February 10, 2012, to supplement the resistance to the Motion for Summary Judgment. The Court extended these deadlines after Wahls failed to appear for the first scheduled deposition. Wahls' deposition was eventually taken. After the deposition, Garnavillo renewed its Motion for Summary Judgment. The Court held another hearing on the merits of the summary judgment motion and took the matters under advisement.

## THE PARTIES' ARGUMENTS

Garnavillo seeks summary judgment arguing that it never received any payments from Debtor. It admits Wahls, Garnavillo's President, received the payments and cashed the checks. However, Garnavillo claims Wahls did not deposit the checks with Garnavillo and instead acted on his own to divert the money to other purposes. Garnavillo argues Plaintiff has produced no evidence that Garnavillo ever received the payments and/or benefited from them—and thus it was not a recipient of the transfers.

In support of its Motion, Garnavillo presents: (1) the affidavit of Garnavillo's Treasurer, John Kregel, who states that he knew nothing of the alleged payments before the suit; and (2) the affidavit of Ron Wahls, Garnavillo's

3

President, who states that he had no authority to cash the checks made out to Garnavillo from Debtor. Both Wahls and Kregel state in their affidavits: "None of the 77 payments totaling $164,375.22 alleged in the Complaint . . . ever entered Garnavillo's bank account."

> Garnavillo further argues:
>
> Mr. Wahl's position as the President of Garnavillo does not create a genuine issue of material fact as to his authority. Both Garnavillo and Mr. Wahls maintain that Mr. Wahls had no authority to deposit checks made to Garnavillo. Garnavillo is simply a church, whose President became involved in matters that did not pertain to the church.

(Reply to Supp., ECF Doc. No. 32, at 3.) At his deposition Wahls stated that while the checks were made out to Garnavillo, he cashed the checks without Garnavillo's knowledge and used the proceeds to pay Agriprocessors' undocumented workers.

> In response, Plaintiff argues:
>
> Trustee admits that it appears the check payments detailed in the Trustee's complaint appear not to have entered Garnavillo Gospel's bank account, according to records submitted by John Kregel. There is not, however, any evidence to suggest the checks were not cashed and money disbursed at the behest or approval of Garnavillo Gospel by its agent, Ron Wahls.

(Resp. Stat. Mat. Facts, ECF Doc. No. 39, at 2.) Plaintiff argues Wahls was and acted as Garnavillo's agent at all relevant times. Plaintiff presents statements from Wahls showing that he had either actual or apparent authority to act on behalf of Garnavillo. Plaintiff asserts this established an agency relationship subjecting Garnavillo to liability.

4

## CONCLUSIONS OF LAW

**A. Summary Judgment**

Summary judgment is governed by Federal Rule of Bankruptcy Procedure 7056. Rule 7056 applies Federal Rule of Civil Procedure 56 in adversary proceedings. Rule 56 states, in relevant part, that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The granting of "[s]ummary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th Cir. 2007). Summary judgment is appropriate when only questions of law are involved. Anderson v. Hess Co., 649 F.3d 891, 894 (8th Cir. 2011).

The burden of showing there are no genuine issues of material fact belongs to the moving party. Winthrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 468 (8th Cir. 2004). "Once the movant has supported the motion, the non-moving party 'must affirmatively show that a material issue of fact remains in dispute and may not simply rest on the hope of discrediting the movant's evidence at trial.'" In re Houston, 385 B.R. 268, 271 (Bankr. N.D. Iowa 2008) (quoting Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996)).

5

"A 'material' fact is one 'that might affect the outcome of the suit under the governing law . . . .'" Johnson v. Crooks, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is genuine if a reasonable fact-finder could return a verdict for the nonmoving party on the question. Anderson v. Liberty Lobby, Inc., 477 U.S. at 252. Evidence that raises only "some metaphysical doubt as to the material facts" does not create a genuine issue of fact. Matsushita Elec. Indus. Co. v. Zenith Radio, Corp., 475 U.S. 573, 586 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" In re Patch, 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting Matsushita Elec. Indus. Co., 475 U.S. at 587).

### B. Agency and 11 U.S.C. § 550

The claims in this case seek to set aside either preferential transfers under § 547(b) or fraudulent conveyances under § 548(a). However, the summary judgment arguments do not deal with whether the Trustee has sufficient evidence to establish the merits of his preferential or fraudulent transfer theory—or even that the transfers could be avoided. Instead, the arguments deal with whether one of the defendants—Garnavillo—could be liable for the transfer. Liability for a transfer is governed by 11 U.S.C. § 550. That section is entitled "Liability of transferee of avoided transfer" and states:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the **trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from** – (1) the initial transferee of such transfer or **the entity for whose benefit such transfer was made**; or (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a) (emphasis added).

> Although the Bankruptcy Code does not define 'transferee', and there is no legislative history on the point, we think the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes. When A gives a check to B as agent for C, then C is the 'initial transferee'; the agent may be disregarded.

Bonded Fin. Servs., Inc. v. European Am. Bank, 838 F.2d 890, 893 (7th Cir. 1988); see In re Incomnet, Inc., 463 F.3d 1064, 1070 (9th Cir. 2006). "Under the explicit provisions of § 550, a money judgment may be awarded not only against the transferee of fraudulently conveyed property but also against any entity for whose benefit the transfer was made. The Code does not restrict recovery to those persons or entities receiving the property." In re Ohio Corrugating Co., 70 B.R. 920, 924 (Bankr. N.D. Ohio 1987).

"Bankruptcy courts have consistently held that 11 U.S.C. § 550 'is designed to restore the estate to the financial condition that would have existed had the transfer never occurred.'" Kingsley v. Wetzel (In re Kingsley), 518 F.3d 874, 877 (11th Cir. 2008) (quoting In re Sawran, 359 B.R. 348, 354 (Bankr. S.D. Fla. 2007)); see Butler v. Lejcar (In re Butler), 171 B.R. 321, 327 (Bankr. N.D. Ill.

7

1994) (after determining a § 548 avoidance the court must next analyze whether the trustee can recovery the property from the party). "'In fraudulent transfer actions, there is a distinction between avoiding the transaction and actually recovering the property or the value thereof.'" Kingsley, 518 F.3d at 877 (quoting In re Int'l Admin. Servs., 408 F.3d 689, 703 (11th Cir. 2005)). "While the language of section 550(a) does not appear to present an exception to recovery of a preference under section 547, courts have held that it does provide a defense to a preference action for parties who act as a mere conduit in receiving a transfer solely for another and not for their own benefit." Argus Mgmt. Group v. GAB Robins, Inc. (In re CVEO Corp.), 327 B.R. 210, 216 (Bankr. D. Del. 2005).

However, "a 'transferee' must . . . be something different than a mere 'holder,' 'possessor,' or 'agent' and cannot be treated for purposes of recovery under § 550(a) as 'anyone who touches the money.'" Miller v. T.C. Sheet Metal Control Bd. Trust Fund (In re Curran V. Nielsen Co., Inc.), No. 4-92-6328, 1995 WL 711268, at *3 (Bankr. D. Minn. Nov. 29, 1995) (quoting Bonded Fin. Servs., 838 F.2d at 894). "A party who serves as a mere intermediary is not an initial transferee because it holds the funds 'only for the purpose of fulfilling an instruction to make the funds available to someone else.'" Id. at 893 (citation omitted).

8

To be liable under 550(a), the party must have the right to exercise dominion and control over the funds. See Luker v. Reeves (In re Reeves), 65 F.3d 670, 676 (8th Cir. 1995) ("At least seven other circuits have held that, to be an initial transferee, a party must have dominion and control over the transferred funds."); In re First Sec. Mtg. Co., 33 F.3d 42, 43 (10th Cir. 1994); In re Coutee, 984 F.2d 138, 140-41 (5th Cir. 1993); In re Bullion Reserve of N. Am., 922 F.2d 544, 549 n.3 (9th Cir. 1991) (listing cases); Lowry v. Sec. Pac. Data Prods. (In re Columbia Data Prods., Inc.), 892 F.2d 26, 29 (4th Cir. 1989); Bonded Fin. Servs. Inc., 838 F.2d at 893.

> "While courts have consistently held that the Bonded dominion and control test is the appropriate test to apply when determining whether a person or entity constitutes an initial transferee under § 550, those same courts have disagreed about the type of dominion and control that must be asserted." Bowers, 99 F.3d at 155. While "some courts have held that a principal or agent acting in his or her representative capacity is an initial transferee where that person exercised physical control over the funds," most courts require more than mere physical dominion or de facto control over the fraudulently transferred funds. Id. (citations omitted). For example, some "courts have required the principal or agent to have *legal* dominion and control over the funds transferred in order to constitute the initial transferee of the funds." Id. (citations omitted). These courts have held that the dominion and control test requires that the initial transferee have '**the right** to put those funds to one's own purpose.' Id. at 156 (quotation omitted).

718 Arch St. Assocs. v. Blatstein (In re Blatstein), 260 B.R. 698, 716–17 (E.D. Pa 2001) (emphasis added). "A party that receives a transfer directly from the debtor will not be considered the initial transferee unless that party gains actual dominion

9

and control over the money or other asset through the transfer." In re Butler, 171 B.R. at 327.

"[C]ase law establishes the term [transferee] does not include a party who acts only as a conduit in a transfer and acquires no beneficial interest in the property." Brandt v. Hicks, Muse & Co. (In re Healthco Intern., Inc.), 195 B.R. 971, 982 (Bankr. D. Mass. 1996); see Rustoton v. Bevan (In re D.E.I. Sys., Inc.), No. 09-02082, 2011 WL 1261603, at *4 (Bankr. D. Utah Mar. 31, 2011) ("To qualify as a transferee, a party must acquire a beneficial interest in the property."). One court found that the question of "Defendant's power over the account raises a genuine issue of material fact." In re CVEO Corp., 327 B.R. at 217. As in In re CVEO Corp., there remains a genuine issue of fact on the question of the right of Garnavillo to exercise dominion and control over the funds at issue and thus the implications of 11 U.S.C. § 550.

Although the parties appear to agree that the transferred funds did not enter Garnavillo's bank account, they disagree about whether Wahls' actions in cashing the checks created liability as to Garnavillo under an agency theory. The particular factual question raised here is whether Wahls was an agent of Garnavillo as to the transfers at issue here—and if so, whether that agency relationship gave Garnavillo the right to exercise dominion or control over the funds.

> Agency is "the fiduciary relationship that results from the manifestation of consent by one person to another that the other shall

10

> act on his behalf and subject to his control, and consent by the other so to act." S. Pac. Transp. Co. v. Cont'l Shippers Ass'n, Inc., 642 F.2d 236, 238 (8th Cir. 1981) (citing Armstrong v. Republic Realty Mortgage Corp., 631 F.2d 1344, 1348 (8th Cir. 1980)). An agent's authority may be apparent, express or implied. See Gatzemeyer v. Vogel, 544 F.2d 988, 992 (8th Cir. 1976). Actual authority exists if the agent has been granted authority to act on the behalf of the principal "either expressly or by implication." AgriStor Leasing v. Farrow, 826 F.2d 732, 738 (8th Cir. 1987). Actual authority "focuses on communications and contacts between the principal and the agent." Id. Apparent authority, by contrast, is "determined by what the principal does, rather than by any acts of the agent." Grismore v. Consolidated Prod. Co., 5 N.W.2d 646, 651 (Iowa 1942); see also Restatement (Third) of Agency § 2.03 (Tentative Draft No. 2, 2001) ("Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.").

Asa-Brandt, Inc. v. ADM Investor Servs., Inc., 344 F.3d 738, 749 (8th Cir. 2003). Determinations of an agency relationship are resolved by reference to state agency law.

> "The party asserting an agency relationship must prove its existence by a preponderance of the evidence." Soults Farms, Inc. v. Schafer, 797 N.W.2d 92, 101 (Iowa 2011). "Agency . . . results from (1) manifestation of consent by one person, the principal, that another, the agent, shall act on the former's behalf and subject to the former's control and, (2) consent by the latter to so act." Pillsbury Co. v. Ward, 250 N.W.2d 35, 38 (Iowa 1977). To establish agency, the agent must have actual or apparent authority to act on the principal's behalf. Fed. Land Bank of Omaha v. Union Bank & Trust Co. of Ottumwa, 290 N.W. 512, 514-15 (Iowa 1940). The Restatement (Third) of Agency states agency as arising "when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's

11

control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01, at 17 (2006).

Peak v. Adams, 799 N.W.2d 535, 547 n.2 (Iowa 2011); see Frontier Leasing Corp. v. Links Eng'g, LLC, 781 N.W.2d 772, 776 (Iowa 2010).

> Actual authority exists if the principal has either expressly or by implication granted the agent the authority to act on the principal's behalf. Grismore v. Consol. Prods. Co., 5 N.W.2d 646, 651 (Iowa 1942). Actual authority is composed of two authority classifications, one known as "express authority" and the other known as "implied authority." Id. Express authority exists where there is direct evidence the principal granted authority to the agent to act on its behalf. Id. Where circumstantial evidence proves the agent's authority, however, the authority is implied. Id.

Soults Farms, Inc., 797 N.W.2d at 102.

> "A fundamental principal of agency law is that whatever an agent does, within the scope of his or her actual authority, binds the principal." Magnusson Agency v. Public Entity Nat'l Company – Midwest, 560 N.W.2d 20, 25 (Iowa 1997). Actual authority to act is created when a principal intentionally confers authority on the agent. Hendricks v. Great Plains Supply Co., 609 N.W.2d 486, 493 (Iowa 2000). In contrast, "[a]pparent authority is authority which, although not actually granted, has been knowingly permitted by the principal or which the principal holds the agent out as possessing." Magnusson Agency, 560 N.W.2d at 25.

Pearce v. E.L.W. Corp. (In re Pearce), 400 B.R. 126, 131 (Bankr. N.D. Iowa 2009).

The Iowa Supreme Court has held:

> [T]he president of a corporation has authority "to bind a corporation to the payment of a promissory note is not to be implied from the mere fact that the person assuming to represent [the corporation] is its president, yet such authority may be found in the fact that the corporate business has been intrusted [sic] to his management and control." Citizens' Bank v. Pub. Drug Co., 181 N.W. 274, 277 (Iowa

>   >   1921); see also Hobbs v. Homes, Inc., 71 N.W.2d 592, 599 (Iowa 1955) (finding sufficient evidence of control to create fact question as to whether president had implied authority to bind corporation); 19 C.J.S. Corporations § 533, at 41 (2007) (noting the president is frequently the controlling officer and accordingly has many implied powers). We have also stated that a president's implied authority is limited to actions incidental to his corporate duties and the president's actions must be within the ordinary course of the business. Newberry v. Barth Inc., 252 N.W.2d 711, 714 (Iowa 1977); White v. Elgin Creamery Co., 79 N.W. 283, 284 (Iowa 1899).
>
> Soults Farms, Inc, 797 N.W.2d at 102.

"The existence of agency is ordinarily an issue of fact." C&J Vantage Leasing Co. v. Outlook Farm Golf Club, LLC, 784 N.W.2d 753, 760 (Iowa 2010); see Waukon Auto Supply v. Farmers & Merchs. Sav. Bank, 440 N.W.2d 844, 847 (Iowa 1989) ("'For apparent authority to exist, the principal must have acted in such a manner as to lead persons dealing with the agent to believe the agent has authority.' . . . This determination is a fact question.").

## DISCUSSION

There are factual disputes here about whether Wahls had implied and/or express authority to act on behalf of Garnavillo—and if so whether his agency or authority gave Garnavillo 'the right' to exercise control. Wahls admits that he: "endorsed checks made by Agriprocessors, Inc. to the order of 'Garnavillo Gospel' as 'Ron Wahls/Garnavillo Gospel', 'Garnavillo Gospel/Ron Wahls', or similar without informing Garnavillo" that he had done so. (Wahls Aff., ECF Doc. No. 18.) Wahls further states that "Garnavillo did not authorize [him] to cash checks

13

made to Garnavillo." (Id.) Garnavillo argues this establishes conclusively that Wahls was not Garnavillo's agent and thus Garnavillo is not the transferee responsible under § 550.

Plaintiff argues that while Garnavillo as an organization may not have specifically told Wahls that he had authority, Wahls' position within the organization—and other facts in the record—gave him that authority—or certainly the appearance of having the authority to cash, deposit, and withdraw funds from Garnavillo's account. See Soults Farms, Inc., 797 N.W.2d at 102. The Court agrees with Plaintiff.

Garnavillo's answer to interrogatory number 14, itself, raises a genuine issue of material fact on the question of Wahls' apparent authority to act:

> Interrogatory No. 14: Identify the officers or persons in charge or control of your business by name, address, phone number, and their relationship (either through sanguinity or affinity) with Sholom Rubashkin, and/or their relationship with the Debtor.
>
> Answer: **Garnavillo is a church, whose affairs are conducted by President Ron Wahls**, Vice-President Gary Dempster, and Secretary/Treasurer John Kregel, 506 S. Washington, Garnavillo, IA 53409; (319) 964-2588. Garnavillo, Gary Dempster, and John Kregel have no relationship with Sholom Rubashkin or Debtor. Prior to this suit, Garnavillo, Gary Dempster, and John Kregel did not know that Ron Wahls had an association with Sholom Rubashkin or Debtor. Garnavillo lacks the requested information about Ron Wahls.

(Plaintiff Exh. 1, ECF Doc. No. 30-1 (emphasis added).) As President, through which Garnavillo admittedly conducted its affairs, Wahls' role alone raises a fact

14

issue on whether he had either actual or apparent authority to act on Garnavillo's behalf. Garnavillo is an entity and can only act through its officers and agents.

Further, Wahls appears to have believed, or at least led others to believe, that he had authority to act on behalf of Garnavillo. The following exchange occurred during Mr. Wahls' deposition:

> Q. Now, the payee listed on—Let's look at the first check. It says Garnavillo Gospel?
> A. Uh-huh.
> Q. Your name does not appear on this check, correct?
> A. Correct.
> Q. But you endorsed the checks, and this is a bit of a fuzzy image, but it appears that you have endorsed it as Ron Wahls, and underneath, Garnavillo Gospel on almost every check? If you look through here, does that appear to be the case?
> A. Yes.
> Q. Now, why did you endorse these checks this way?
> A. I suppose that the bank told me to.
> Q. Do you recall that the bank told you to?
> A. I asked them—told them they made the checks out. They said, are you—**Do you have authority to cash checks, and I said, yes**. And they said, well, you just write Garnavillo Gospel and write your name below it.
> Q. So you had authority to cash checks on behalf of Garnavillo Gospel?
> A. Well, I can deposit checks.
> Q. **So you can deposit checks on behalf of Garnavillo Gospel?**
> A. **Yes.**
> Q. Well, if these checks are made payable to Garnavillo Gospel, why were you depositing them in your personal account?
> A. I didn't deposit them.
> Q. So after you endorsed them, what happened?
> A. I received cash.
> Q. Do you believe you had authority to do that?
> A. I don't know.
> Q. But you did it?

15

A. Yes, we did.

(Wahls Dep., ECF Doc. No. 41-1, at 5 (emphasis added).)

This deposition testimony provides evidence supporting Plaintiff's theory that Wahls had actual or apparent authority to act on Garnavillo's behalf. If he did have the authority to act for Garnavillo, it also raises the specific question of whether that gave Garnavillo "the right" to exercise dominion or control over the money—let alone whether it actually did so. Viewing the facts in a light most favorable to Plaintiff, as the Court must do at this stage of the proceedings, Plaintiff has presented a genuine issue of fact that must be determined by a fact-finder at trial. See C&J Vantage Leasing, Co., 784 N.W.2d at 760.

**WHEREFORE**, Garnavillo Gospel Hall Association's Motion for Summary Judgment and Renewed Motion for Summary Judgment are **DENIED**.

**FURTHER,** a telephonic scheduling conference to schedule trial shall be held on Friday, June 22, 2012, at 10:45 a.m.

Dated and Entered: May 30, 2012

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE

16